UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CANDACE WAGNER,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A BERRYHILL, Deputy Commissioner of Social Security for Operations,<br><br>　　　　　　Defendant. | CASE NO. 2:17-CV-01882-DWC<br><br>ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS |

　　　Plaintiff Candace Wagner filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of the Deputy Commissioner of Social Security's ("Commissioner") denial of Plaintiff's application for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 5.

　　　After considering the record, the Court concludes the Administrative Law Judge ("ALJ") did not err in his evaluation of Plaintiff's subjective symptom testimony. Further, the Court concludes Plaintiff has not shown the ALJ committed harmful error with respect to opinion

evidence from "other medical sources." The Court also concludes the record reflects the ALJ did not violate Plaintiff's due process rights. Therefore, because the ALJ's decision finding Plaintiff not disabled is supported by substantial evidence, the Commissioner's decision is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

## FACTUAL AND PROCEDURAL HISTORY

On October 3, 2014, Plaintiff filed applications for SSI and DIB, alleging disability as of January 21, 2013. *See* Dkt. 8, Administrative Record ("AR") 13. The applications were denied upon initial administrative review and on reconsideration. *See* AR 13. On August 29, 2016, ALJ Larry Kennedy held the first hearing in this matter. AR 57-72. The ALJ did not complete the hearing that day, however, and instead continued the hearing so it could be held on a later date due to records which were not yet in the administrative record. AR 64-72. On December 1, 2016, the ALJ held the second hearing in this matter. AR 35-56. Plaintiff did not attend that hearing. *See* AR 37-38, 49-50, 210, 352. In a decision dated May 1, 2017, the ALJ determined Plaintiff to be not disabled. AR 10-34. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. *See* AR 1-3; 20 C.F.R. § 404.981, § 416.1481.

In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by: (1) failing to provide specific, clear and convincing reasons to reject Plaintiff's subjective symptom testimony; (2) failing to properly consider opinion evidence from "other" sources; (3) violating Plaintiff's due process rights by conducting the second hearing without her presence and denying the issuance of a subpoena; and (4) failing to reconcile a conflict between testimony from the vocational expert ("VE") and the Dictionary of Occupational Titles ("DOT"). Dkt. 10, pp. 1-17.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

### I. Whether the ALJ provided legally sufficient reasons to reject Plaintiff's subjective symptom testimony.

Plaintiff argues the ALJ erred by failing to provide specific, clear and convincing reasons to reject her subjective symptom testimony. Dkt. 10, pp. 11-14.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d at 821, 834 (9th Cir. 1995) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.3d at 834 (citation omitted). While Social Security Administration ("SSA") regulations have eliminated references to the term "credibility," the Ninth Circuit has held its previous rulings on claimant's subjective complaints – which use the term "credibility" – are still applicable.[1] *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016); 2016 WL 1237954 (Mar. 24, 2016); *see also Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (noting SSR 16-3p is consistent with existing 9th Circuit precedent). Questions of credibility are solely within the ALJ's control. *Sample v. Schweiker*, 694 F.2d 639,

---

[1] Because the applicable Ninth Circuit case law refers to the term "credibility," the Court will use the terms "credibility" and "subjective symptom testimony" interchangeably.

642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). Moreover, the Court may not reverse a credibility determination where the determination is based on contradictory or ambiguous evidence. *Id.* at 579.

Here, the ALJ considered various sources of Plaintiff's statements in assessing her subjective symptom testimony. *See* AR 20. The ALJ first considered a written statement Plaintiff submitted after the second hearing, in which Plaintiff wrote that discrimination and harassment at her previous employer intensified her post-traumatic stress disorder symptoms. AR 353. Plaintiff also wrote she is "not capable of working" because her "pain levels have taken [over] [her] quality of life." AR 355. Plaintiff stated this pain stems from her degenerative disc disease, and her pain has gotten worse due to osteoarthritis in her back, hands, feet, and arms. AR 355.

Next, the ALJ noted Plaintiff told an examiner that she cannot sit or stand in any particular position for any length of time. *See* AR 20, 570. Further, the ALJ explained that in an electronic correspondence Plaintiff provided from January 2013, Plaintiff wrote to a union steward about working conditions that elevated her anxiety and depression. *See* AR 20, 302-07. Plaintiff stated the anxiety from her working conditions made it difficult to focus at work or sleep at night. AR 302-07.

The ALJ summarized Plaintiff's statements and determined that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her statements regarding "the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 20, 23. Specifically, the ALJ rejected Plaintiff's subjective symptom testimony because:

> *The claimant regularly performed activities that were beyond her alleged physical abilities throughout the period of disability alleged: lifting her daughter and her wheelchair, doing yard work, and moving loads with a rented truck.* Though complaining of pain, physical examinations of the claimant regularly showed normal gait, strength, and ranges of motion. Apart from the relief she gets from psychiatric medication, the claimant does not appear to be open to behavior modification to improve her stress response. This has led to confrontations at work. However, psychological examinations have revealed, at most, moderate levels of limitation in any mental area of functioning; and medical examiners have frequently found no psychological abnormalities at examination. The claimant's responsibilities, coupled with her lack of resources and family support network make it important for her to learn to handle stress and changes; but her symptoms brought on by stress are not altogether debilitating.

AR 23 (emphasis added) (internal citations omitted).

The ALJ, in relevant part, rejected Plaintiff's subjective symptom testimony because she regularly performed activities beyond her alleged physical abilities. AR 23. There are two grounds under which an ALJ may use daily activities to form the basis of an adverse credibility determination: (1) whether the activities contradict the claimant's other testimony, or (2) whether the activities of daily living meet "the threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ referred to the first ground by claiming Plaintiff's daily activities contradicted her statements about her "alleged physical abilities." AR 23. The ALJ accurately noted the record shows Plaintiff regularly performed yard work, including mowing a half-acre lawn with a push mower.[2] *See* AR 20, 21-22 (ALJ summarizing Plaintiff's activities); *see also* AR 567, 645, 649, 682, 692 (records reflecting Plaintiff's activities). The record also shows Plaintiff performed these activities despite her allegations that she "cannot sit or stand in any particular position for any length of time." *See* AR 570. Thus, given that yard work necessarily implicates standing and sitting, Plaintiff's ability to perform yard work contradicts her statement that she cannot stand or sit for any length of time.

---

[2] Plaintiff continued performing yard work even after telling providers that this work exasperated her pain. *See* AR 645, 649, 682, 692.

Plaintiff argues that, by citing these activities, "the ALJ punished [Plaintiff] for occasionally doing more than lying around all day." Dkt. 10, pp. 13-14 (citing *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Plaintiff's argument is unsupported by the record. The ALJ was not punishing Plaintiff for performing these activities; rather, the ALJ noted these activities contradict Plaintiff's statements about her inability to sit or stand, and showed Plaintiff was capable of greater physical exertional activities than she alleged. *See* AR 23. As such, the ALJ's statement was supported by substantial evidence in the record and was a specific, clear and convincing reason to reject Plaintiff's testimony. *See Carroll v. Colvin*, 2013 WL 4830747, at *4 (W.D. Wash. Sept. 11, 2013) (ALJ reasonably concluded Plaintiff's testimony that he could not stand for more than 10-15 minutes was undermined, in part, by his ability to do yard work, move a mattress, and use a wheelbarrow).

Although the ALJ provided other reasons to discount Plaintiff's testimony, the Court need not consider whether these remaining reasons contained error, as the ALJ gave a proper reason to discount Plaintiff's testimony and the "*ultimate credibility determination* [is] adequately supported by substantial evidence[.]" *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (emphasis in original) (citation omitted) (concluding, in light of harmless error principles, "the ALJ's decision finding [the claimant] less than fully credible is valid" despite some errors because the ALJ gave legally sufficient reasons to reject Plaintiff's testimony). Hence, the ALJ did not commit harmful error in his assessment of Plaintiff's subjective symptom testimony.[3]

---

[3] The parties dispute whether there is sufficient evidence of malingering. Dkt. 10, pp. 11-12; Dkt. 11, pp. 2-3. The existence of "affirmative evidence suggesting malingering vitiates the clear and convincing standard of review," such that an ALJ need not provide any reason to reject a claimant's testimony. *See Schow v. Astrue*, 272 Fed. Appx. 647, 651 (internal quotation marks omitted) (9th Cir. 2008); *see also Carmickle*, 533 F.3d at 1160

**II. Whether the ALJ committed harmful error in his assessment of opinion evidence from "other medical sources."**

Next, Plaintiff argues the ALJ erred with respect to medical evidence from two "other medical sources": Treating chiropractor, Dr. Mark Webber, D.C., and treating physician's assistant, Ms. Heidi Burgi, PA-C. Dkt. 10, pp. 4-8.

Pursuant to federal regulations, medical opinions from "other medical sources," such as chiropractors and physicians' assistants, must be considered. *See* 20 C.F.R. § 404.1513(d) (effective Sept. 3, 2013 to Mar. 26, 2017);[4] *see also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (citing 20 C.F.R. § 404.1513(a), (d)); SSR 06-3p, 2006 WL 2329939. "Other medical source" testimony, which the Ninth Circuit treats as lay witness testimony, "is competent evidence an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Turner*, 613 F.3d at 1224. In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted. *Lewis*, 236 F.3d at 512.

Nonetheless, harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115. With respect to "other medical source" and lay witness testimony in particular, an ALJ's

---

(citations omitted). However, because the ALJ provided sufficient, clear and convincing reasons for rejecting Plaintiff's testimony, the Court need not decide whether there was affirmative evidence of malingering in this case.

[4] These regulations apply for claims, such as Plaintiff's claim, filed before March 27, 2017. *See* 20 C.F.R. § 404.1513(a).

1 | error is harmless if the lay testimony did not describe limitations beyond the claimant's properly

2 | discredited testimony. *See Molina*, 674 F.3d at 1115-17, 1122.

3 |     A.  <u>Dr. Webber</u>

4 |     Dr. Webber is Plaintiff's treating chiropractor. *See* AR 357-403 (treatment notes). On

5 | January 22, 2013, Dr. Webber conducted a physical examination of Plaintiff and wrote the

6 | following about Plaintiff's "work status":

> She is unable to work at this time because she is *unable to perform her work
> duties without aggravating her neck and especially low back pain*. She is *unable
> to sit for long periods* without aggravating her pain.

9 | AR 399 (emphasis added).

10 |     On April 3, 2013, Dr. Webber conducted another examination of Plaintiff, and wrote:

> She is unable to perform all her work duties at this time because she is *unable to
> sit for long periods* of time, such as sitting at her desk in front of a computer . . .
> She also *cannot stand for long periods* of time without aggravating her condition .
> . . . I do not feel that going back to work for 8 hour days, sitting, is possible
> without *significantly aggravating [Plaintiff's] neck and back pain* conditions.

14 | AR 383-84 (emphasis added).

15 |     The ALJ failed to mention Dr. Webber's opinions or treatment notes in any part of his

16 | decision. *See* AR 13-28. Plaintiff argues the ALJ's failure to mention Dr. Webber's assessments

17 | was error, as "[t]he ALJ was obligated to provide germane reasons for rejecting" Dr. Webber's

18 | opinions. Dkt. 10, p. 6 (citation omitted). Defendant concedes the ALJ failed to discuss Dr.

19 | Webber's opinion but argues he did not harmfully err in doing so. Dkt. 11, pp. 3-4.

20 |     Notably, Dr. Webber did not opine to any limitations beyond Plaintiff's testimony, and

21 | the ALJ validly found Plaintiff's testimony about her limitations were not credible. *See* Section

22 | I., *supra*. Plaintiff stated she is "not capable of working" due to her "pain levels." AR 355.

23 | Likewise, Dr. Webber opined Plaintiff was unable to work without aggravating her pain. AR

24 |

383-84, 399. Moreover, both Plaintiff and Dr. Webber stated Plaintiff was unable to sit or stand for long periods of time. *See* AR 383-84, 399, 570. When an ALJ finds a claimant's testimony about limitations not credible, and those same limitations are opined to by an "other medical source," the ALJ's error on the "other medical source" is harmless. *See Molina*, 674 F.3d at 1122 ("Because the ALJ had validly rejected all the limitations described by the lay witnesses in discussing Molina's testimony, we are confident that the ALJ's failure to give specific witness-by-witness reasons for rejecting the lay testimony did not alter the ultimate nondisability determination."); *see also Turner*, 613 F.3d at 1224 (treating an "other" source as lay testimony). Therefore, to the extent the ALJ erred by failing to discuss Dr. Webber's opinions, any error was harmless.

B. Ms. Burgi

Ms. Burgi is a Physician's Assistant who has provided Plaintiff with medical care since January 2014. *See* AR 597. Ms. Burgi provided a statement on August 25, 2016, in which she described Plaintiff's conditions and limitations. AR 597. Regarding Plaintiff's physical health conditions, Ms. Burgi stated Plaintiff "has had chronic pain for many years," stemming from degenerative disc disease in the lumbar, thoracic, and cervical spinal regions; lumbar and cervical radicular pain; and chronic pain syndrome. AR 597. Ms. Burgi also wrote Plaintiff has had x-rays and MRIs done – most recently in December 2015 – and described some of the treatments Plaintiff has received for her pain. AR 597. Thereafter, Ms. Burgi stated:

> With pain management . . . [Plaintiff] is *able to do her activities of daily living. Although beyond that her pain is very limiting*. And specifically limits her from doing her career job.

AR 597 (emphasis added).

Next, with respect to Plaintiff's mental health conditions, Ms. Burgi wrote Plaintiff has post-traumatic stress disorder ("PTSD"), major depression, and severe anxiety. AR 597. Ms. Burgi described the mental health treatment Plaintiff has received, and then stated:

> From my experience with [Plaintiff], her PTSD, depression, and anxiety are very *limiting to anything outside of [activities of daily living]*. Her anxiety flares when she is trying to communicate important information or is to meet deadlines or specific requirements. She has trouble putting together full clear thoughts, has trouble concentrating/focusing. This, again, severely limits her from doing her career job, and maintaining any sort of gainful employment.

AR 597 (emphasis added).

The ALJ summarized Ms. Burgi's statement and gave it "slight weight," stating:

> Ms. Burgi, whose area of expertise is not mental health care, has reviewed the claimant's history of care with therapists and counselors, and relies on the claimant's subjective reports. She does not offer specific limitations in any functional area, and implies that the claimant is not at all or minimally limited in her activities of daily living. Further, she offers no objective findings to indicate in what ways the claimant is limited. Indeed, *this opinion is inconsistent with the claimant's activities such as mowing a half-acre lawn with a push mower, transferring her daughter and lifting her daughter's wheelchair or doing yard work in exchange for rent.* This opinion is inconsistent with the opinions of acceptable medical sources discussed above. Likewise, *I give little weight to Ms. Burgi's statement that the claimant's physical pain "specifically limits her from doing her career job," when she acknowledges "with pain management . . . she is able to do her activities of daily living." Ms. Burgi's statement is vague and seemingly contradictory*, though she does allude to findings upon which she relied, including x-rays and MRI, though the results of these are not cited.

AR 25 (emphasis added).

The ALJ, in part, discounted Ms. Burgi's opinion because it was "vague and seemingly contradictory." AR 25. Specifically, the ALJ noted Ms. Burgi's statement that Plaintiff could perform her activities of daily living "with pain management" was contradictory to her statement that Plaintiff could not work. AR 25. AR 25. An ALJ may reject an opinion that is "brief, conclusory, and inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216 (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)). Here, Ms. Burgi failed to explain

how Plaintiff, with pain management, can perform her activities of daily living but cannot perform work activities. *See* AR 597. As the ALJ further noted, the contradictory nature of Ms. Burgi's statement about Plaintiff's pain is particularly inconsistent given Plaintiff's ability to routinely mow a half-acre lawn and conduct other yard work. AR 25. Therefore, the ALJ's assertion that Ms. Burgi's opinion was vague and contradictory was supported by substantial evidence in the record, and was a germane reason to discount this opinion. *See Bayliss*, 427 F.3d at 1216 (upholding an ALJ's rejection of a physician's opinion for being contradictory where the physician's "other recorded observations and opinions" contradicted his opinion about Plaintiff's physical abilities).

Plaintiff contends the ALJ failed to consider the factors in 20 C.F.R. § 404.1527 when assessing Ms. Burgi's opinion. Dkt. 10, p. 7. Regardless of a medical opinion's source, an ALJ should evaluate a medical opinion based on various factors, including (1) the examining relationship, (2) the treating relationship, (3) supportability of the opinion from relevant evidence, such as medical signs and laboratory findings, (4) consistency with the medical record, and (5) the physician's specialization. 20 C.F.R. §§ 1527(c), (f); *see also Revels v. Berryhill*, 874 F.3d 648, 665 (9th Cir. 2017). When an ALJ does not give a treating physician "controlling weight," the ALJ should consider the length of the treating relationship and frequency of examination, and nature and extent of the treating relationship. 20 C.F.R. § 1527(c)(2). However, "the regulations caution that depending on the facts of the case, not every factor will apply in every case in evaluating an opinion from a source who is not considered an acceptable medical source." *Moorman v. Berryhill*, 2018 WL 2455442, at *4 (W.D. Wash. June 1, 2018) (citing 20 C.F.R. § 404.1527(f)(1)).

Contrary to Plaintiff's arguments, the ALJ's decision here reflects he did consider the factors in assessing Ms. Burgi's opinion. Regarding the first and second factors – examining and treating relationship – the ALJ identified Ms. Burgi as Plaintiff's "medical caregiver" earlier in his decision. AR 25; *see* 20 C.F.R. §§ 1527(c)(1)-(2). This indicates the ALJ was aware Ms. Burgi examined Plaintiff and provided her with care. For the third factor – supportability from relevant evidence – the ALJ stated Ms. Burgi "has reviewed the claimant's history of care with therapists and counselors." AR 25; 20 C.F.R. § 1527(c)(3). The ALJ also stated Ms. Burgi "allude[d] to findings upon which she relied, including x-rays and [an] MRI, though the results of these are not cited." AR 25; 20 C.F.R. § 1527(c)(3). Regarding the fourth factor – consistency with the medical record – the ALJ found Ms. Burgi's opinion was inconsistent with "the opinions of acceptable medical sources discussed above." AR 25; 20 C.F.R. § 1527(c)(4). With respect to the fifth factor – Ms. Burgi's specialization – the ALJ noted Ms. Burgi's "area of expertise is not mental health care[.]" AR 25; 20 C.F.R. § 1527(c)(5). Lastly, regarding the nature and extent of the treating relationship – which considers the "knowledge" a medical source has about the claimant's impairments – the ALJ identified Ms. Burgi Plaintiff's as a "medical caregiver" and noted she reviewed Plaintiff's treatment history, x-rays, and an MRI. AR 25; 20 C.F.R. § 1527(c)(2)(ii).

The only factor the ALJ did not explicitly discuss was "[l]ength of the treatment relationship and the frequency of examination." 20 C.F.R. § 1527(c)(2)(i); *see* AR 25. Plaintiff has not pointed to binding authority establishing that the ALJ must explicitly discuss every factor. *See* Dkt. 10, pp. 7-8. To the contrary, the regulations state "not every factor for weighing opinion evidence will apply in every case," and the relevance of each factors depends on the facts of the case. 20 C.F.R. §1527(f)(1). In this case, given that the record reflects Ms. Burgi

examined Plaintiff five times over two years and nine months, the Court cannot determine the ALJ would have given greater weight to Ms. Burgi's opinion if he had explicitly discussed this factor. *See* AR 539-40, 542-43, 687-91, 692-96, 697-700 (Ms. Burgi's examination notes for the five examinations).

In sum, the ALJ provided a germane reason, supported by substantial evidence in the record, for discounting Ms. Burgi's opinion. The ALJ also did not commit harmful error in his assessment of Ms. Burgi's opinion with respect to the factors in 20 C.F.R. § 1527. Hence, the ALJ properly considered Ms. Burgi's opinion. Furthermore, while the ALJ provided multiple reasons to discount Ms. Burgi's opinion, the Court need not assess whether these reasons were proper, as any other error would be harmless. *See Presley-Carrillo v. Berryhill*, 692 Fed.Appx. 941, 944-45 (9th Cir. 2017) (citing *Carmickle*, 533 F.3d at 1162) (noting that although an ALJ erred with regard to one reason he gave to discount a medical opinion, "this error was harmless because the ALJ gave a reason supported by the record" to discount the opinion).

**III.  Whether the ALJ violated Plaintiff's due process rights.**

Plaintiff argues the ALJ violated Plaintiff's due process rights in two ways: First, by conducting the second hearing without her presence, and second, by denying her subpoena request. Dkt. 10, pp. 8-11.

A.  <u>Opportunity to be Heard</u>

"The Supreme Court has held that applicants for social security disability benefits are entitled to due process in the determination of their claims." *Holohan v. Massanari*, 246 F.3d 1195, 1209 (9th Cir. 2001) (citing *Richardson v. Perales*, 402 U.S. 389, 398, 401-02 (1971)). Procedural due process requires a social security claimant receive "meaningful notice and an opportunity to be heard before [her] claim for disability benefits may be denied." *Udd v.*

*Massanari*, 245 F.3d 1096, 1099 (9th Cir. 2001) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). Accordingly, pursuant to SSA regulations, a claimant has the right to appear before an ALJ, present evidence, and state her position. 20 C.F.R. §§ 404.950(a), 416.1450(a). However, a claimant may waive her right to appear by sending the ALJ "a waiver or a written statement indicating that you do not wish to appear at the hearing." 20 C.F.R. §§ 404.950(b), 416.1450(b). A claimant's waiver of the right to appear must made be voluntarily and knowingly. *See, e.g.*, *Stoner v. Sec. Health and Human Servs.*, 837 F.2d 759, 761 (6th Cir. 1988).

At the first hearing on August 29, 2016, Plaintiff did not testify because the hearing was continued to complete the administrative record. AR 64-72. At the second hearing on December 1, 2016, Plaintiff was unable to attend the hearing because she was stuck in traffic. *See* AR 37-38, 49-50, 210, 352. At the end of the second hearing, the ALJ told Plaintiff's attorney he would accept a written statement from Plaintiff in lieu of her testimony. AR 53. The ALJ suggested Plaintiff respond to the questions he had for her, as well as any testimony Plaintiff's attorney would have solicited. AR 53.

On December 6, 2016, the ALJ issued a "Notice to Show Good Cause" to Plaintiff. AR 206. The Notice to Show Good cause informed Plaintiff that if she wanted another hearing before an ALJ, she needed to "show good cause" for her failure to appear. AR 206. The ALJ requested Plaintiff submit her response to the SSA within ten days. AR 206. On December 14, 2016, Plaintiff responded to the ALJ in writing, informing the ALJ of the circumstances that made her miss the hearing. AR 209-10.

On January 27, 2017, Plaintiff's attorney submitted a letter to the ALJ, informing the ALJ that the attorney had "yet to receive a new hearing date" despite Plaintiff's timely response to the Notice to Show Good Cause. AR 352. But "[i]n the interest of time and efficiency," Plaintiff's

attorney submitted Plaintiff's answers to the ALJ's hearing questions. AR 352-56. In addition, the attorney wrote:

> [Plaintiff] hereby *waives her right to another hearing and requests that your office issue a decision in her case*. She believes that her answers supplied herein are adequate to answer the questions you had at hearing that she was unable to answer because of her absence.

AR 352 (emphasis added). The ALJ, in his decision, described this letter and stated that the issue of whether Plaintiff showed good cause for her failure to appear "is moot because the claimant, through her representative waived the right to another hearing." AR 14.

In all, the ALJ informed Plaintiff of her right to another hearing in the Notice to Show Good Cause. AR 206. However, Plaintiff expressly waived this right and requested the ALJ issue a decision without her oral testimony. AR 352. Additionally, Plaintiff provided written answers to the ALJ's questions. AR 352. Thus, given Plaintiff's constructive knowledge of her right to another hearing, express waiver of this right, and request that the ALJ issue a decision, the record reflects Plaintiff knowingly and voluntarily waived her right to be heard in another hearing. Accordingly, the Court finds the ALJ did not violate Plaintiff's due process rights. *See* 20 C.F.R. §§ 404.950(b), 416.1450(b).

B. <u>Issuance of Subpoena Denial</u>

When "necessary for the full presentation of a case," an ALJ may issue a subpoena at a party's request or on his own initiative for the production of documents. 20 C.F.R. §§ 404.950(d)(1), 416.1450(d)(1). An ALJ has discretion to decide when a subpoena is warranted. *Solis v. Schweiker*, 719 F.2d 301, 302 (9th Cir. 1983). The Ninth Circuit has held ALJ may abuse such discretion, however, and violate a claimant's procedural due process rights, under certain circumstances. *Id.* at 302. For example, an ALJ may violate a claimant's due process rights if he

does not subpoena or permit cross-examination of an examining physician who is a "crucial witness" and "whose findings substantially contradict the other medical testimony." *Id.* at 301.

At the first hearing, Plaintiff's attorney requested the ALJ help her obtain employment records from Plaintiff's former employer. AR 65-67. Plaintiff's attorney surmised the records would show Plaintiff was not "able to maintain consistent work" because of her absences and tardiness. AR 65. Plaintiff's attorney also wished to obtain "any write-ups and pink slips." AR 65. The ALJ informed Plaintiff's attorney that she would need to submit a subpoena request to the ALJ before the next hearing if she wanted the ALJ's assistance in procuring the records. AR 66-67. Further, the ALJ informed the attorney that SSA regulations governed how Plaintiff's attorney should request the subpoena. AR 66-67.

Plaintiff's attorney submitted the subpoena request to the ALJ the day after the first hearing. AR 183-85. Plaintiff's attorney requested the ALJ subpoena reports from Plaintiff's former employer showing whether Plaintiff met her goals, her attendance and disciplinary records, and interoffice communications regarding Plaintiff's employment status. AR 183-84. At the second hearing, the ALJ denied Plaintiff's subpoena request, finding the request did not meet "the threshold requirements in the regulations." AR 41. The ALJ explained that although the subpoena request asked for particular records, the request did not state "the important facts [the attorney] expect[ed] to prove" with the records. AR 41; *see* 20 C.F.R. § 404.950(d)(2).

Plaintiff now argues the ALJ violated her due process rights by denying the subpoena request, as the employment records "would have shown [Plaintiff's] condition had prevented her from performing even sedentary work on a regular and continuing basis, thus they were relevant." Dkt. 10, pp. 9-10. The ALJ found Plaintiff would indeed be precluded from performing this past relevant work at Step Four of the sequential evaluation process. AR 26.

Even assuming the employment records showed Plaintiff could not perform *that* sedentary occupation on a regular and continuing basis, Plaintiff has not established these records would show Plaintiff would be precluded from *all* sedentary work. "As such, the Court finds no basis for supporting the conclusion that these documents were crucial to the ALJ's decision in this case and, therefore, no due process violation[.]" *See Geschke v. Astrue*, 2008 WL 11389578 (W.D. Wash. Sept. 18, 2008) (finding no due process violation where the ALJ denied a subpoena request to cross-examine authors of a document because the ALJ did not discuss, cite, or rely on the document in making his decision).

### IV. Whether the ALJ committed harmful error by failing to reconcile purported errors between the VE's testimony and the DOT.

Lastly, Plaintiff contends the ALJ erred by failing to reconcile an inconsistency between the VE's testimony and the DOT. Dkt. 10, pp. 14-16.

In determining whether a claimant is disabled, an ALJ may consult various sources, including the DOT and a VE. *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017). "Presumably, the opinion of the VE would comport with the DOT's guidance." *Id.* If, however, the VE's opinion that the claimant can work "conflicts with, or seems to conflict with, the requirements listed in the [DOT]," the ALJ has an obligation to ask the VE to reconcile the conflict before relying on the VE's testimony. *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016) (citing Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *2 (2000)); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007). The ALJ's obligation to reconcile a conflict is triggered only where the conflict is "obvious or apparent." *Gutierrez*, 844 F.3d at 808. To be an obvious or apparent conflict, the VE's testimony "must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected." *Id.*

Thus, the Court's inquiry in a case with an alleged DOT and VE conflict has two steps: First, was there a conflict between the VE's testimony and the DOT that the ALJ was obligated to reconcile? *See id.* Second, if there was a conflict, did the ALJ properly reconcile that conflict? *See Lamear*, 865 F.3d at 1205-06; *see also Massachi*, 486 F.3d at 1153-54.

In this case, the ALJ asked the VE to consider a hypothetical individual who, in relevant part, "would avoid concentrated exposure to vibrations and hazards." AR 45. Thereafter, the VE testified the hypothetical individual could perform the representative occupations of production line solderer, electrical accessories assembler, and agricultural sorter. AR 45-46. The ALJ did not ask the VE whether her testimony was consistent with the DOT. *See* AR 45-49. In his decision, the ALJ relied on the VE's testimony and found Plaintiff could perform these three occupations. AR 27.

Plaintiff argues the ALJ erred by failing to reconcile a conflict between the VE's testimony and the DOT's descriptions of these occupations. Dkt. 10, pp. 13-16. In particular, Plaintiff asserts there is a conflict between the VE's testimony that a person who must avoid vibrations and hazards can perform these occupations, and the DOT's descriptions for these occupations, which Plaintiff claims require "frequent exposure to contaminants, hazardous equipment, and situations." *Id.* Defendant, on the other hand, concedes the ALJ failed to ask the VE to reconcile any conflict but argues any error was harmless because "the DOT states that the jobs in question contain no exposure to vibration or hazards." Dkt. 11, pp. 7-8.

Defendant's argument is persuasive. Despite Plaintiff's assertion, the DOT does not state these occupations require "frequent" exposure to contaminants, hazardous equipment, or situations. To the contrary, the DOT states vibration, moving mechanical parts, electric shock, high exposed places, radiation, explosives, and toxic caustic chemicals are all "not present" in

these occupations. *See* DOT 813.684-022, 1991 WL 681592 (production line solderer); DOT 729.687-010, 1991 WL 679733 (electrical accessories assembler); DOT 529.687-186, 1991 WL 674781 (agricultural sorter). Hence, because there was no conflict for the ALJ to reconcile, Plaintiff has not shown the ALJ committed harmful error. *See Massachi*, 486 F.3d at 1154 n.19 (an ALJ's failure to ask the VE to reconcile a purported conflict between her testimony and the DOT is harmless where there is no conflict); *see also Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) ("The burden is on the party claiming error to demonstrate not only the error, but also that it affected [her] 'substantial rights.'").

## CONCLUSION

Based on the foregoing reasons, the Court hereby finds the ALJ properly concluded Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is affirmed and this case is dismissed with prejudice. The Clerk is directed to enter judgment for Defendant and close the case.

Dated this 26th day of June, 2018.

*[signature]*
David W. Christel
United States Magistrate Judge